**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| **COTT CORPORATION,** |
| **Plaintiff,** |
| *-against-* |
| **REFRESCO HOLDING B.V.,** |
| **Defendant.** |

Index No. _____

**COMPLAINT FOR**
**SPECIFIC PERFORMANCE AND DECLARATORY RELIEF**

Plaintiff Cott Corporation ("Cott"), by and through its undersigned counsel, hereby alleges

for its Complaint against Defendant Refresco Holding B.V. ("Refresco") as follows:

**INTRODUCTION**

1.      By this action, Cott seeks an order compelling Refresco to direct the release of

$12,369,415 of escrowed funds that should have been paid to Cott on July 30, 2019, in accordance

with the July 24, 2017 Share Purchase Agreement entered into between Cott, Refresco, and certain

other parties (the "SPA") in connection with Cott's $1.25 billion sale of its carbonated soda and

juice business to Refresco.

2.      Under the terms of the SPA, Cott and Refresco agreed to escrow a portion of the

purchase price paid by Refresco to cover potential indemnification obligations that might arise

after the closing of the sale transaction (on January 30, 2018).  Refresco was required under the

SPA to provide notice of any indemnification claim promptly, and no later than 30 days after

learning the facts underlying the claim.  The parties also agreed that the latest date Refresco could

submit any indemnification to Cott was July 30, 2019.

3.     For nearly a year and a half, Cott heard nothing from Refresco concerning any new indemnification claims.  Five days prior to the July 30, 2019 deadline, however, Refresco sent Cott the first of three notices purporting to submit no less than eight separate claims for indemnification to Cott.  Based on these claims, Refresco refused to instruct the escrow agent to release *any* of the contested escrow funds to Cott.

4.     Although Refresco has declined many of Cott's requests for information, the available facts indicate that the newly submitted claims are largely contrived, for the purpose of blocking the return to Cott of the portion of the purchase price set aside in escrow to address indemnity claims.  Refresco has in several instances failed to substantiate key elements of the indemnification claims, raising significant doubts concerning their legitimacy.  In addition, the aggregate value of the indemnification claims based on alleged breaches of Cott's representations and warranties appears to fall well short of the $4.5 million threshold the parties agreed the claims must exceed before Cott is required to pay any amounts for these claims.  Based on these reasons and those set forth below, Refresco's refusal to release any portion of the escrowed funds constitutes a clear breach of its obligations under the SPA.

5.     Cott respectfully requests that this Court:  (i) declare that no portion of the $12,369,415 remaining in escrow may be withheld from Cott; and (ii) order Refresco to instruct the escrow agent to release the disputed funds to Cott.

## PARTIES AND JURISDICTION

6.     Plaintiff Cott Corporation is a corporation organized under the laws of Canada that is a North American and European water and filtration solutions service company.  Cott maintains

its principal place of business at 4221 W. Boy Scout Blvd., Tampa, Florida 33607.  Cott is a signatory to the SPA.[1]

7.      Defendant Refresco Holding B.V. is a corporation organized under the laws of the Netherlands that is an independent bottler of beverages for retailers and A-brands in North America and Europe.  Refresco Holding B.V. is the successor of Refresco Group N.V., a signatory to the SPA.

8.      The SPA is governed by New York law.  *See* SPA § 14.15.  The parties agreed in Section 14.15 of the SPA that this Court would have exclusive jurisdiction over any action or proceeding arising out of or relating to the SPA, waiving any right to challenge jurisdiction or venue.  *See* SPA § 14.15.

9.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1), because this is an action between citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Cott is a Canadian corporation with its principal place of business in Florida.  Refresco is a Netherlands corporation with its principal place of business in the Netherlands.

## FACTUAL BACKGROUND

### Indemnification under the Share Purchase Agreement

10.     On July 24, 2017, Cott and Refresco entered into the SPA, pursuant to which Cott sold its carbonated soft drink and juice manufacturing business (the "Traditional Business") to Refresco for $1.25 billion.  A true and correct copy of the SPA is attached hereto as Exhibit A. The sale of the Traditional Business under the SPA closed on January 30, 2018 (the "Closing").

---

[1]  Capitalized terms used and not otherwise defined herein have the meanings set forth in the Share Purchase Agreement.

11.     Under the terms of the SPA, Cott and Refresco made customary representations and warranties to each other and undertook to perform customary covenants prior to and after the Closing.

12.     Under Section 12.1(a) of the SPA, Cott agreed to indemnify the "Purchaser Indemnified Parties"—which include Refresco—for "Damages" for a breach of certain of Cott's representations and warranties or a breach or failure to perform certain SPA covenants or agreements, subject to several conditions set forth in the SPA.  Section 1.1 of the SPA defines "Damages" as "losses, damages, liabilities, deficiencies, actions, suits, proceedings, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorney's fees and the cost of enforcing any right to indemnification hereunder and the reasonable cost of pursuing any insurance providers . . . ."

13.     Likewise, Refresco also agreed to indemnify Cott for any Damages, including reasonable attorney's fees and costs, for breaches of Refresco's representations, warranties, and covenants.

14.     In general, indemnifiable Damages resulting from breaches of Cott's representations and warranties are capped at $12.5 million and are subject to a $4.5 million "basket" (the "Basket Amount").  Refresco is not entitled to recover any Damages arising from Cott's breaches of the SPA's representations and warranties until the aggregate of those Damages exceeds $4.5 million.  Furthermore, even where Refresco's aggregate Damages exceed the $4.5 million threshold, Refresco may collect only on those Damages in excess of $4.5 million, up to the $12.5 million cap.  Additionally, Refresco may not recover for any individual indemnifiable claim unless the threshold amount of $100,000 in Damages is reached on such claim (the "De Minimis Amount").

15.     Section 12.4 of the SPA required Refresco to give written notice "promptly, and in any event within 30 days after obtaining facts that are sufficient . . . to determine whether a claim for indemnification may be properly made."  In addition, for an alleged breach of representations and warranties relevant to this case, Refresco was required to notify Cott of a claim for indemnification by July 30, 2019 at the latest.

16.     Under Section 12.4(a) of the SPA, Refresco is required to provide "reasonable detail of the individual items of such Damages included in the amount so stated" in its Notice of Claim.  Further, under Section 9.9 of the SPA, Refresco is required for a period of seven (7) years from Closing to allow Cott "reasonable access to . . . books and records . . . for the purpose of obtaining information reasonably required in connection with . . . the defense of any claim by a third party or any other reasonable purpose."

17.     The SPA and the Escrow Agreement (a true and correct copy of which is attached as Exhibit B) required that $12.5 million of the purchase price (the "Escrow Amount") be set aside, and deposited with an escrow agent (the "Escrow Agent") for eighteen (18) months following the Closing, or until July 30, 2019 (the "Release Date"), at which time any remaining funds would be released to Cott.  The Escrow Agreement specifies that the Escrow Agent must retain and not disburse "an amount equal to pending indemnity claims (if any) for which a valid Notice of Claim has been provided to [Cott] prior to the Release Date pursuant to the [SPA]."

18.     Cott seeks specific performance and declaratory and injunctive relief because Cott has no adequate remedy at law.  In particular, Cott seeks an order compelling Refresco to specifically perform its obligations to release $12,369,415 from the Escrow Amount (as defined hereinafter).  Under Section 14.2 of the SPA, each party acknowledged and agreed that it would be irreparably harmed in the event that any provision of the SPA was not performed in accordance

with its specific terms or was otherwise breached, and that money damages would not be a sufficient remedy for such a breach.  The parties further agreed that, in the event of a breach by any party of any covenant or obligation contained in the SPA, the non-breaching party shall be entitled to seek and obtain an order of specific performance to enforce the observance and performance of such covenant or obligation and an injunction restraining such breach.

### The Escrow Dispute

19.     On July 25, 2019, just five days before the Escrow Amount was to be released to Cott, Refresco sent Cott a Notice of Indemnification Claim and Notice to Retain Funds in Escrow Relating Thereto (the "July 25, 2019 Notice") that listed five alleged indemnification claims and notified Cott that at least $4,712,203.40 should be retained in escrow until the five claims are resolved.

20.     On July 29, 2019, one day before the Release Date, Refresco sent Cott a second Notice of Indemnification (the "July 29, 2019 Notice") that listed two new claims and requested that additional funds be retained in escrow until all of the claims are resolved.

21.     On August 12, 2019, Cott wrote to Refresco to inform it that neither the July 25, 2019 Notice nor the July 29, 2019 Notice contained sufficient information for Cott to evaluate the purported claims and Damages and to request that Refresco provide additional information necessary for Cott to analyze the purported claims and Damages.  Cott also raised several timely objections to the seven alleged claims, Refresco's right to raise the claims, and Refresco's Damages calculation.

22.     Notwithstanding these objections, in an effort to compromise these claims, Cott indicated in its August 12, 2019 response that it was willing to release $332,749 to Refresco from the Escrow Amount for two alleged claims that were specifically indemnifiable (i.e., not subject

to the Basket Amount or the De Minimis Amount) under the SPA.  Cott also wrote that it was willing to retain $250,000 in escrow for costs and fees incurred litigating certain indemnity claims. Cott requested that the remaining Escrow Amount be released to Cott, per the terms of the SPA and the Escrow Agreement.

23.     On September 3, 2019, over one month after the deadline to raise indemnification claims expired, Refresco sent Cott a third Notice of Indemnification Claim (the "September 3, 2019 Notice") that raised an additional claim allegedly subject to indemnification related to the alleged dumping of non-hazardous materials, such as concrete, at a property formerly associated with the Traditional Business and transferred to Refresco pursuant to the SPA (the "Dumping Claim").  Refresco asserted that Damages from the Dumping Claim would exceed $500,000, but provided no information to support that estimate or the merits of the claim.

24.     On September 11, 2019, Cott informed Refresco that the Dumping Claim was time-barred.  While Refresco referenced a seventy-two (72) month survival period in its September 3, 2019 Notice, that survival period only applies to claims that were listed on Schedule 4.16(a) to the SPA.  Refresco admitted in its Notice that the Dumping Claim was not disclosed on this schedule, so the longer survival period does not apply to this claim.   In addition, Cott stated that the September 3, 2019 Notice lacked the basic information required for Cott to evaluate the purported claim and Damages and requested that Refresco provide additional information necessary for Cott to analyze the purported claim and Damages estimated in the September 3, 2019 Notice.

25.     At that time, Cott also repeated its request for the additional information necessary to analyze the seven other alleged claims and corresponding Damages listed in the July 25, 2019 Notice and the July 29, 2019 Notice.

26.     Additionally, after sending its objections to Refresco, Cott worked in good faith, as

required by Section 12.4(b) of the SPA, in an effort to reach agreement upon the parties' rights with respect to each disputed claim.

27.     Indeed, for the next four months, Cott repeatedly renewed its requests to Refresco for the basic information necessary to analyze the alleged claims and Damages.  Every request, however, was met with empty promises, stall tactics, or the production of irrelevant or insufficient materials.

28.     For example, on September 11, 2019, Refresco told Cott that it was gathering any "reasonably requested items and plan[ned] to share them with the Sellers in the next two weeks."

29.     Approximately two weeks later, on September 26, 2019, Refresco's counsel stated that he had been out of the office unexpectedly, but he pledged to provide an update on Monday, September 30, 2019.

30.     After hearing nothing on September 30th, Cott's counsel reached out to Refresco's counsel for an update on October 2, 2019.  When the parties finally spoke on October 8, 2019, almost two months after Cott initially requested additional information, Refresco stalled by claiming it was ready to produce the requested materials but would only do so after the parties executed a Common Interest Agreement.  Cott immediately agreed to this proposal, and on October 16, 2019, the parties signed the Common Interest Agreement.

31.     On October 17, 2019, Cott inquired as to the date the promised materials would be produced.  Refresco's counsel responded four days later by claiming that he would follow up the next day with an estimated production date.  After that date came and went, Cott followed up again on Monday, October 28, 2019, and noted that it had been attempting to obtain the requested materials for nearly two and a half months and that it was "frustrated with the continual delays."

32.     When the long promised production was finally made on October 30, 2019, it was

woefully incomplete.  Refresco produced legal invoices related to one of the claims but those invoices did not even support the amount of Damages claimed by Refresco for that claim.  Refresco did not produce any materials to support the seven other claims it has asserted[2].

33.     When Cott's counsel spoke with Refresco's counsel about the deficient production on November 8, 2019, Refresco once again asked for more time to produce its supporting materials.  Later that day, Cott sent a letter to Refresco demanding the immediate release of $9,808,285.84 from the Escrow Amount.  As Cott explained in that letter, even if Refresco's Damages estimates were accepted, Refresco's Damages for breaches of representations and warranties would not exceed the Basket Amount, and Refresco was therefore not entitled to indemnification for those Damages.  While Cott also disagreed with Refresco's estimates of Damages for its specific indemnity claims, it agreed to leave $2,888,129.16 in Escrow for those claims if Refresco would release the remaining $9,808,285.84 as required by the SPA.  In that letter, Cott also explained that many of the supporting materials it requested should have been readily accessible at the time a valid claim would have been made, and Refresco's refusal to provide those materials after nearly three months of requests supported the inference that Refresco's claims had been asserted in bad faith.  Cott warned that it would seek all of its Damages resulting from Refresco's breach of the SPA and bad faith refusal to release these funds unless they were distributed to Cott within five (5) days.

34.     Refresco responded on November 18, 2019 by refusing to release any funds from the Escrow Amount.  Instead, Refresco proposed that the parties mediate their disputes.

---

[2]   Two weeks later, Refresco also produced its own one-page unsubstantiated estimate of remediation costs for the Dumping Claim and a random assortment of invoices with only the explanation that they "relat[e] to the Nelson Property Landslip."  The invoices included an invoice for pest elimination service, and Refresco did not explain how this or any of the other invoices related to the supposed landslip issue addressed below.

35.     In a last ditch effort to resolve this matter short of litigation, Cott agreed to mediate on the condition that, among other things, Refresco would produce all information substantiating its claims by December 31, 2019.

36.     Refresco agreed to that condition, but December 31, 2019 came and went without the production of any additional information or materials.  Cott's counsel spoke with Refresco's counsel on January 2, 2019 and was told, once again, that the long promised materials would be delivered the following week.  No additional materials were produced the week of January 6, 2019.

37.     Finally, on January 16, 2019 and January 22, 2019, the long awaited supplemental production arrived, consisting primarily of another random assortment of invoices supposedly related to the Nelson Landslip.  *See supra* note 2.  The only document substantively addressing Refresco's Nelson Landslip claim was a 2014 report that opined that proposed repairs to a road and a structure would cost, in the aggregate, significantly less than the Damages Refresco estimated for this claim.[3]  Refresco did not produce any additional documents to substantiate its remaining seven claims.

38.     To date, despite Cott's repeated requests for basic information, Refresco has not provided documents to support its alleged claims and associated Damages, in violation of Section 12.4 of the SPA.  Refresco has offered no credible explanation for its failure to produce the requested information, which Refresco necessarily would have needed to marshal prior to making any good faith indemnification claim to Cott.  Refresco's failure to meet its disclosure obligations, combined with its failure to provide Cott with prompt notice of its claims before the applicable

---

[3]     As discussed below, Cott is only required to indemnify Refresco for defects in "buildings" that materially impair their use.  *See* SPA § 4.6(d).  Even if the defect described in the report materially impairs the use of the building, and the report suggests it does not, Cott would only be liable for the fraction of these repair costs relating to the building, not those proposed to repair a road.

thirty (30) day deadline and instead making claims for the first time only days prior to the SPA's July 30, 2019 deadline, indicates that Refresco lacks a good faith basis for its alleged claims and its Damages estimations.

39.     As a result of Refresco's spurious claims, $12,369,415 of the Escrow Amount is disputed and has not been released to Cott.  Under the Escrow Agreement, the disputed Escrow Amount will remain in escrow either until Refresco and Cott jointly request its release or until a court issues a final, non-appealable judgment that orders the parties to direct the Escrow Agent to release it.

### The Alleged Indemnification Claims Lack Merit or Miscalculate Damages

40.     Refresco's three Notices allege that Refresco is entitled to indemnification from Cott for eight claims.  Three of these claims allege Damages from claims expressly disclosed by Cott in the SPA for which a specific indemnity was negotiated between the parties.  The other five claims allege breaches of Cott's representations and warranties, and the Damages estimated for those claims do not exceed the $4.5 million Basket Amount threshold necessary for Refresco to receive indemnification for these types of claims.

**A.     Specific Indemnity Claims[4]**

41.     First, in the July 25, 2019 Notice, Refresco claims that it is entitled to indemnification for Damages relating to *Thomas v. Costco Wholesale Corporation*, No. 12-cv-02908 (N.D. Cal., filed June 5, 2012) (the "Costco Litigation"), a class action asserting false advertising claims, which was listed on Schedule 4.15 of the SPA.  Under Section 12.1(a)(ix) of

---

[4]   Specific Indemnity Claims relate to negotiated indemnity items known at the time the SPA was signed that do not count against the $4.5 million Basket Amount.  *See* SPA § 12.1(a)(ix) (providing indemnification for scheduled claims); SPA §§ 12.2(b) (applying Basket Amount limitation to claims under § 12.1(a)(i), § 12.1(a)(ii) and § 12.1(a)(vii)).

the SPA, Cott must indemnify Refresco for Damages relating to matters set forth in Schedule 12.1(a)(ix) of the SPA, which includes "[e]ach of the matters set forth on Schedule 4.15." Per the terms of the SPA, Refresco is entitled only to "reasonable attorneys' fees" relating to this claim.

42.     Refresco alleges that it incurred Damages of $156,823.41 related to the Costco Litigation in the form of attorneys' fees. As support, Refresco attached a spreadsheet of legal fee invoices to the July 25, 2019 Notice. The invoices, however, total only $82,749.16.

43.     To date, despite Cott's repeated requests for additional information supporting its Damages estimate, Refresco has not produced evidence to support $156,823.41 in Damages. Nor has Refresco produced materials demonstrating that its attorneys' fees were reasonable. Refresco therefore lacks a good faith basis to seek $156,823.41 for this claim.

44.     Second, in the July 25, 2019 Notice, Refresco claims that it is entitled to indemnification for Damages relating to *Sanchez v. Ken Cloud Roofing Company, LLC v. Cott Beverages, Inc.* (the "Skylight Matter"), a personal injury case, which was also disclosed on Schedule 4.15 of the SPA.

45.     As noted in Cott's August 12, 2019 letter, the Skylight Matter is covered by insurance. Upon information and belief, Refresco's Damages estimate is several times the amount of the deductible under Refresco's applicable insurance policies for the Skylight Matter, suggesting Refresco does not have a good faith basis for its Damages estimate.

46.     Despite Cott's repeated requests to Refresco to forward all applicable insurance policies and any other evidence supporting Refresco's Damages estimate, Refresco has produced no evidence to support its Damages estimate for the Skylight Matter. Thus, Cott concludes that Refresco lacks a good faith basis for claiming this amount.

47.     Third, in the July 25, 2019 Notice, Refresco claims that it is entitled to

indemnification for a tax dispute related to a Cott entity in Mexico that was transferred pursuant to the SPA (the "Mexico Contest").  The Mexico Contest is listed on Schedule 4.4(b) of the SPA, in which Cott disclosed Tax Matters.

48.     In January 2019, Cott wrote to Refresco to exercise its right to control the Mexico Contest under Section 13.2(c) of the SPA and to inform Refresco that it was obligated to post a bond necessary to serve as collateral for the taxes allegedly owed to the Mexican authorities.  Cott also informed Refresco that it had a duty to mitigate Damages related to the Mexico Contest.

49.     After Refresco posted the requisite bond, Cott released $130,584.72 from the Escrow Amount to reimburse Refresco for the bond payment and related attorneys' fees.

50.     Additionally, throughout the Mexico Contest, Cott has complied with Refresco's requests for information related to the claim, as required by Section 13.2 of the SPA.

51.     In the July 25, 2019 Notice, Refresco now alleges that it has incurred and will continue to incur additional Damages relating to the Mexico Contest.  Refresco estimates that Damages will exceed $2 million and seeks indemnification for that amount.

52.     Untenably, however, Refresco has yet to produce evidence sufficient to support its Damages estimate.  Further, upon information and belief, if Refresco mitigates its Damages as required by the SPA, Refresco's Damages would be significantly less than $2 million and may even be zero.

53.     Notwithstanding its objections to these three claims, and in a good faith attempt to compromise this dispute, Cott informed Refresco in its August 12, 2019 letter that it was willing to release $332,749 to Refresco from the Escrow Amount in connection with the Costco Litigation and the Skylight Matter.  Cott also informed Refresco that it was willing to retain $250,000 in escrow for costs and fees incurred in litigating the Mexico Contest.  Refresco refused to accept

that offer, insisting on pressing its additional claims that are barred by the terms of the SPA and/or unsupported by adequate documentation.[5]

**B.      Claims Alleging General Breaches of the SPA's Representations and Warranties[6]**

54.     Fourth, in the July 25, 2019 Notice, Refresco claims that it is entitled to indemnification for Damages relating to *Veraseal LLC v. Wal-Mart Stores, Inc.*, No. 17-00527 (E.D. Tex., filed July 7, 2017) (the "Veraseal Litigation").  More specifically, Refresco alleges that Cott failed to disclose this litigation in violation of Section 4.15 of the SPA, in which Cott represented and warranted that, except as set forth in Schedule 4.15, there was no pending or threatened litigation against Cott with respect to the business relevant to this case, other than any action in which Cott's liability could not reasonably be expected to exceed $500,000.

55.     According to the July 25, 2019 Notice, Refresco settled the Veraseal Litigation for $192,000 and now seeks indemnification for that amount pursuant to Section 12.1(a)(i) and 12.1(a)(viii) of the SPA.

56.     The Veraseal Litigation claim does not warrant keeping $192,000 of the Escrow Amount in escrow.  Upon information and belief, based upon the limited information shared with Cott by Refresco, this claim is ineligible for indemnification.  As an initial matter, Cott was not required to disclose the Veraseal Litigation to Refresco prior to Closing because the Veraseal Litigation did not involve Cott's products.  Further, even if the Veraseal Litigation did pertain to

---

[5]   Cott accepts (and has always accepted) responsibility for its specific indemnity obligations and therefore no amount needs to be retained in escrow for these claims.

[6]   Indemnification for Damages arising from Cott's alleged breaches of the SPA's representations and warranties is subject to the $100,000 De Minimis Amount and the $4.5 million Basket Amount.  *See* SPA §§ 12.2(b), 12.2(c).

Cott's products, Section 4.15 of the SPA only required disclosure of litigation in which liability could reasonably be expected to exceed $500,000.  The fact that Refresco's ultimate exposure was $192,000 indicates that Cott could not have had a reasonable expectation that liability would exceed $500,000.

57.     In the alternative, this claim is ineligible for indemnification because Refresco breached the SPA by settling the Veraseal Litigation without providing Cott with notice of the claim and without obtaining Cott's consent to the settlement, in violation of Section 12.4(c) of the SPA.  Cott was prejudiced by Refresco's failure to provide timely notice of the Veraseal Litigation because it could not participate in the defense of the claim and assess whether the settlement was reasonable.

58.     Cott told Refresco why it is not entitled to indemnification for the Veraseal Litigation and asked Refresco to provide any information or materials contradicting Cott's position, but Refresco has not produced the requested materials, leading Cott to conclude that Refresco lacks a good faith basis for asserting this claim.

59.     Fifth, in the July 25, 2019 Notice, Refresco alleges that it is entitled to indemnification Damages relating to *Advanced Bio Development Inc. v. Pri-Pak, Inc.*, AAA No. 01-18-0004-5899 (the "ABD Arbitration"), which stemmed from a contract between ABD and Pri-Pak, a Cott subsidiary business that was transferred to Refresco pursuant to the SPA.  The contract was disclosed in the SPA, but expired by its own terms before Closing.  In short, Refresco claims that the ABD Arbitration resulted from Cott's failure to inform Refresco that the contract expired before Closing.

60.     Refresco claims that it incurred $193,923.30 in Damages relating to the ABD Arbitration and now seeks indemnification for that amount pursuant to Sections 12.1(a)(ii) and

12.1(a)(viii).

61.     Upon information and belief, based on the limited information shared with Cott by Refresco, this claim is not eligible for indemnification and therefore does not warrant keeping $193,923.30 of the Escrow Amount in escrow.  Cott did not breach the representations and warranties in Section 4.7 of the SPA because Cott was under no obligation to notify Refresco that the contract had expired by its own terms.

62.     Furthermore, the ABD Arbitration claim is untimely.  Upon information and belief, the ABD Arbitration commenced on December 18, 2018, but Refresco did not provide Cott with notice of this claim until July 25, 2019, more than seven months later, in violation of Section 12.4(a) of the SPA.  Cott was prejudiced by this late notice because it did not have the opportunity to participate in the negotiation of this claim with ABD and avoid arbitration.

63.     In addition, Refresco failed to mitigate its alleged Damages in the ABD Arbitration, which bars its right to indemnification under the SPA.  The arbitration was initiated by ABD because Refresco asserted that the contract had expired.  To the extent there are any damages associated with the alleged expiration of the contract, Refresco could have eliminated or mitigated those damages by accepting ABD's request to extend the contract.  Refresco's claim that it was damaged by the expiration of a contract that Refresco could have extended is nonsensical.

64.     Moreover, because Refresco has repeatedly failed to comply with Cott's requests for additional information related to the ABD Arbitration, including but not limited to the notice of arbitration filed in the ABD Arbitration, Cott believes Refresco has no good faith basis to assert this claim or retain $193,923.30 of the Escrow Amount in escrow.

65.     Sixth, in the July 29, 2019 Notice, Refresco alleges that it is entitled to indemnification for Damages related to a Property located in the United Kingdom (the "Nelson

Property").   Refresco claims that a "significant property and landslip issue" (the "Nelson Landslip") has been discovered at the Nelson Property and that Cott was supposedly aware of the issue before Closing, in violation of Section 4.6(d) of the SPA.  In Section 4.6(d) of the SPA, Cott represented and warranted that, to its knowledge, there was "no defect in any of the buildings" on the Nelson Property.

66.     Refresco claims that it incurred or will incur "up to £2 million" in resolving the Nelson Landslip and now seeks indemnification for that amount pursuant to Sections 12.1(a)(i) and 12.1(a)(viii) of the SPA.

67.     Refresco is not entitled to indemnification for Damages relating to the Nelson Landslip.  Upon information and belief, the supposed "landslip issue" consisted only of superficial damages to the Nelson Property's parking lot that were easily repaired.   Because the representations and warranties in Section 4.6(d) apply only to defects in *buildings*, an alleged failure to disclose supposed defects in a parking lot is not a breach.

68.     In the past months, Cott has repeatedly asked Refresco to forward all documentation related to the alleged defect on the Nelson Property and Refresco's estimated Damages, but Refresco has yet to produce information sufficient to demonstrate the merit of this claim or the Damages calculation.  Thus, retaining any amount—let alone "up to £2 million"—in escrow for the Nelson Landslip claim is unwarranted.

69.     Seventh, in the July 29, 2019 Notice, Refresco claims that it is entitled to indemnification for Damages related to a trademark infringement suit filed against a division of Cott's Traditional Business (the "Pakistani Bottler Dispute").  Refresco alleges that Cott failed to disclose this litigation, in supposed breach of its representations and warranties in Section 4.15 of the SPA.

70.     Refresco has not provided a Damages estimate for this claim.

71.     The Pakistani Bottler Dispute is not eligible for indemnification because the business that was sued in this dispute was carved out from the Traditional Business sold to Refresco pursuant to the SPA.  The business and the litigation filed against it was therefore retained by Cott after Closing.  Consequently, Refresco is not entitled to indemnification for the Pakistani Bottler Dispute under the SPA.

72.     Finally, in the September 3, 2019 Notice, Refresco alleges that it is entitled to indemnification for Damages for the Dumping Claim.  *See supra* ¶ 23.  Refresco claims that Cott was aware of the potential issue, but failed to disclose it, in breach of Section 4.16 of the SPA, in which Cott represented and warranted that its Traditional Business was in compliance with all applicable Environmental Laws.

73.     Refresco estimates that the Damages related to the Dumping Claim will exceed $500,000 and seeks indemnification under Section 12.1(a)(i) and 12.1(a)(ix).

74.     As discussed above, this claim is not eligible for indemnification because, *inter alia*, it is time-barred.  *See supra* ¶ 24.  As set forth in Section 12.2(a) of the SPA, Cott's representations and warranties, including the representations and warranties in Section 4.16, expired on July 30, 2019.  Refresco did not notify Cott of the Dumping Claim until September 3, 2019—over a month after the relevant representations and warranties had expired.

75.     Further, since Refresco raised this issue, Cott has repeatedly requested documentation necessary to analyze it, to no avail.  As a result, there is no basis to believe that Refresco has a good faith basis for raising the Dumping Claim or that retaining $500,000 of the Escrow Amount in escrow for this claim is warranted.

76.     Moreover, even if some of these claims are eligible for indemnification, Refresco's

claims that Cott breached the SPA's representations and warranties in aggregate do not exceed the $4.5 million Basket Amount.  Therefore, Cott has no indemnification obligation for these claims.

77.     By contending, without basis and in bad faith, that Refresco has suffered or will suffer Damages relating to the eight supposed indemnification claims, Refresco has improperly prevented Cott from receiving $12,369,415 of the Escrow Amount, in violation of Refresco's contractual obligations under the SPA.  Moreover, by failing to provide Cott with the information requested regarding the claims for which Refresco seeks indemnification, Refresco failed to comply with its obligations under both Section 9.9 and Section 12.4 of the SPA.

### COUNT I
### (Declaratory Judgment)

78.     Cott repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

79.     Under the SPA and the Escrow Agreement, $12,369,415 of the Escrow Amount was to be released to Cott on July 30, 2019.  The alleged claims submitted by Refresco are not eligible for indemnification.  Moreover, the claims alleging Damages resulting from alleged breaches of the SPA's representations and warranties are not indemnifiable because when aggregated they do not exceed the Basket Amount.

80.     Because these claims cannot be properly asserted under Section 12.1 of the SPA, $12,369,415 of the Escrow Amount should have been released to Cott.

81.     The Escrow Agent will not release $12,369,415 of the Escrow Amount to Cott without a court order or joint written instructions from the parties.

82.     Refresco has refused to provide the Escrow Agent with joint written instructions directing the release of $12,369,415 from the Escrow Amount to Cott.  Accordingly, a ripe and justiciable controversy exists between Cott and Refresco regarding their rights and obligations.

83.     Consequently, Cott seeks a court order declaring that $12,369,415 of the Escrow

Amount should be disbursed to Cott.

## COUNT II
### (Breach of Contract – Specific Performance)

84.     Cott repeats and realleges paragraphs 1 through 83 as if set forth herein.

85.     The SPA and the Escrow Agreement required Refresco to agree to release the Escrow Amount as of July 30, 2019, unless a valid, indemnifiable claim existed.  In light of the meritless nature of Refresco's indemnification claims, Refresco has breached the parties' agreements by failing to direct the Escrow Agent to release $12,369,415 of the Escrow Amount to Cott.

86.     Cott thus seeks the remedy of specific performance, requiring Refresco to direct the Escrow Agent to release $12,369,415 of the Escrow Amount to Cott.

87.     The SPA and the Escrow Agreement are binding contracts between the parties.  By refusing to provide requested information about the indemnity claims and at the same time preventing disbursement of the funds, Refresco has breached its obligations under Sections 9.9 and 12.4 of the SPA and has additionally breached its obligations under the Escrow Agreement.

88.     The SPA and the Escrow Agreement each also have an implied covenant of good faith and fair dealing.  Even if Refresco has not breached express provisions of the Agreements, by refusing to provide requested information about the indemnity claims and at the same time preventing disbursement of the funds, Refresco has breached the Agreements' implied covenants of good faith and fair dealing.

89.     Cott has no adequate remedy at law.

90.     Therefore, Cott seeks an order that will require Refresco to direct the Escrow Agent to release $12,369,415 of the Escrow Amount to Cott.

## PRAYER FOR RELIEF

WHEREFORE, Cott respectfully requests that this Court award the following relief:

a.  An order declaring that $12,369,415 of the Escrow Amount should be disbursed to Cott;

b.  An order directing Refresco to specifically perform its contractual obligations by compelling Refresco to direct the Escrow Agent to release $12,369,415 of the Escrow Amount to Cott;

c.  An order granting Cott's attorneys' fees and expenses;

d.  An order granting Cott pre-judgment and post-judgment interest; and

e.  An order for such other and further relief as the Court may deem equitable.

Dated: February 11, 2020
      New York, New York

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: _____
          Clay J. Pierce

1177 Avenue of the Americas
41st Floor
New York, New York 10036
(212) 248-3186
clay.pierce@faegredrinker.com

*Attorneys for Plaintiff Cott Corporation*